## W. N. WILKERSON & Co. *v.* J. M. DOCKERY.

**Estate of Decedent — Executor — Notice to Creditors — Code of 1871, Section 1135.**

Creditors of an estate of a decedent are not bound by the notice of the executor to probate their claims unless it is given in conformity to the law. Evidence of one publication is not sufficient under the provisions of section 1135 of the Code of 1871, which provides that notice shall be published for three consecutive weeks, or longer, if the court should order.[1]

**Same — Notice of the Executor.**

Knowledge of a claim against the estate on the part of the executor is equivalent to the probate of the claim.

---

1

"All claims against the estate of a deceased person, whether due or not, shall be registered in the court in which the letters testamentary or of administration were granted, within one year after the first publication of notice to creditors to present their claims; otherwise the same shall be barred, and no ·suit shall be maintained thereon in any court, even though the existence of such claim may have been well known to the executor or administrator; *provided,* that creditors who have failed to present their claims shall not be barred as to any surplus that remains after the other debts, registered and allowed, have been fully paid, if they present and prove their claims before distribution of the estate." Code of 1880, § 2028; Code of 1892, § 1933; Code of 1906, § 2107.

An administrator cannot by any representations or assurances, however misleading or designing, made to creditors, waive the protection provided for the estate by sections 2026, 2028, Code 1880, which requires creditors to probate their claims within one year or be barred. Nagle *v.* Ball, 71 Miss. 330; 13 So. 929.

J. P. Pratt died·in July, 1879, testate.   J. M. Dockery quali-
fied as executor on the 11th day of August, 1879, and on the 11th
day of September of the same year his first notice to creditors to
present and probate their claims was published.   Pratt owed ap-
pellants an open account and a note which he had executed in his
lifetime.   This claim was not presented to the executor or pro-
bated within twelve months from the time of the first publication,
and the executor refused to pay it, and suit was brought by appel-
lants against the executor to recover the amount of the claim.   The
evidence in the case is sufficiently stated in the opinion of the
court.   The cause was heard by the court, a jury having been
waived.   From a judgment for the defendant plaintiffs appeal.

That a debt is due by a firm of which the decedent was a member does not·
dispense with the necessity for probating it, to prevent the bar of said statute·
in favor of his estate.   Nagle *v.* Ball, 71 Miss. 330; 13 So. 929.

The bar of the Code of 1880, sections 2026, 2028, against claims against
the estate of a decedent which have not been proved within the prescribed·
time cannot be waived by the conduct of the administrator, however, mis-
leading or designing.   Cockrell *v.* Seasongood et al., 33 So. 77.

Where the affidavit of claim against the estate of a decedent fails to con-
· form to the requirements of the Code of 1892, section·1932, that the affidavit
shall state that the amount was "owing from the deceased," "that it is not
usurious," and "that neither the affiant nor any other person has received
payment," the affidavit is fatally defective, and gives no jurisdiction to allow
the claim.   Cheairs et al. *v.* Cheairs et al., 81 Miss. 662; 33 So. 414.

Under Code 1892, § 1932, providing that, after the prescribed affidavit
of claim against the estate of a decedent is made, the clerk shall endorse the
claim, "Probated, allowed, and registered," and that the "probate, registra-
tion, and allowance shall be sufficient presentation of the claim to the admin-
istrator," an endorsement that a claim is allowed and registered is of no
effect,· and does not prevent the bar of limitations.   Cheairs et al. *v.* Cheairs
et al., 81 Miss. 662; 33 So. 414.

Under Code 1892, § 1932, providing that any one desiring to probate his
claim against a decedent's estate shall present to the clerk the written evi-
dence thereof, if any, or, if there be no written evidence thereof, an itemized
account, or a "statement of the claim in writing" signed by the creditor, a
statement in writing, "For legal advice and services rendered (deceased)·
$500," is sufficient, the claim not being based on an itemized account.   Foster
*v.* Shaffer, 84 Miss. 197; 36 So. 243.

Under Code 1892, § 1932, providing for the probation of claims against
the estates of decedents, an open account is not properly probated and cannot
be recovered upon in a suit against the executor if it:   (a) Is not signed by
the creditor; or (b) Does not have the statutory affidavit "attached thereto."
Walker *v.* Nelson, 87 Miss. 268; 39 So. 809.

Appeal from Circuit Court, DeSoto county, Samuel Powell, Judge.

Reversed and new trial awarded, January 9, 1882.

*Attorneys for appellant, Malone & Watson.*

*Attorneys for appellee, D. McKenzie.*

Brief of Malone & Watson:

There are two questions presented by the record in this case. First: Did the executor make the proper publication to creditors to present and register their claims, and within the time required by law, and for the length of time which the law requires? Second: Did the executor have notice of the existence of the claim sued on within one year after the first publication of notice to creditors to present their claims?

The notice to creditors is purely constructive, and must be given in strict pursuance of the terms of the statute; and if the publication be not commenced within the time and continued for the time required by the statute, creditors are not bound by it. Pearl *v.* Conly, 7 S. & M. 356; Bank of Ala. *v.* Windham, 31 Miss. 317; Dowell *v.* Webber, 2 S. & M. 452.

There is no proof that more than one publication of the notice was made, whereas, the statute requires the notice to be published three consecutive weeks. Code 1871, § 1135.

And this publication must be made "within one month after the grant of his letters." Same section.

Here letters were granted on the 11th of August, 1879; the first publication of notice to creditors was made on the 11th of September, following. Was this publication made within one month from the grant of his letters testamentary? We say no.

In Savings & Loan Society *v.* Thompson, 32 California, 347, we quote from the opinion of the court: "The only question in this case is whether a summons was published once a week not less than three months within the meaning of the practice act. It was published on the 10th, 15th, 22d, and 29th of January; the 5th, 12th, 19th, and 26th of March; the 2d and 9th of April, 1865, the first publication being on the 10th of January and the last on the 9th of April. From the 10th of January to the 9th of

April, inclusive, are three full calendar months. We can no more include the 9th of January or the 10th of April in the three intervening calendar months than we can get two Saturdays or two Sundays into one week."

Shall the 11th of August, the day on which letters testamentary were issued to Dockery, the day on which he qualified as executor, be included in computing the "month within" which he should have made publication? At first glance, there seems to be quite a conflict of authorities on this point, but on a closer examination we think they can be reconciled, and it will be found that there is little or no conflict. The rule is, when we count from an act done, the day on which the act is done must be counted. The law takes no account of a fraction of a day, and will presume the act to have been done on the first moment of the day, and so count the day on which the act was done. This is the rule in England. Morris *v.* The Hundred of Gantris, 1 Brownlow, 156; King *v.* Adderley, 2 Douglas, 468; Belloris *v.* Hester, 1 Lord Raymond, 280; and in the Supreme Court of the United States, Arnold et al. *v.* United States, 9 Cranch, 120; and followed by the U. S. Circuit Courts, Pearpoint & Lord *v.* Graham, 4 Washington, C. C. 240; also in the State courts, Chiles *v.* Smith Heirs, 13 Ben Monroe, 460; 32 Cal. 347; 15 Mass. 193; 3 Cold. 459; 3 N. H. 93; 9 N. H. 304.

Many cases may be found where it is stated that in computing time from a certain day, that day is not to be computed. The day in these cases is the *terminus a quo,* and is regarded as a point of time and is therefore not counted. Not so when the computation is from an act done. The granting of the letters here, the act, is the *terminus a quo,* and the day on which it is done is to be included in the computation.

Judge Washington, in Pearpoint & Lord *v.* Graham, *supra,* draws the distinction very clearly. He says: "The expressions used in the deed under consideration are from the date of the said instrument, and the first question is whether the day or the date is to be included or excluded. After a very laborious examination of all the cases, I think the following principles may be considered as settled: Where the computation of time is to be made from an act done the day on which the act is performed is included because the act is the *terminus a quo,* the computation is to be made, and there being in contemplation of law no fraction of a day,

\* \* \* the terminus is considered as commencing on the first moment of the day."

Judge Story delivering the opinion of the court in the case in 9 Cranch, 120, says: "The statute was to take effect from its passage and it is a *general rule* that where the computation is to be made from an act done the day on which the act is done is to be included."

Morris *v.* The Hundred of Gantris, 1 Brownlow, 156, was an action on the statute of hue and cry. The robbery was laid and proved to have been on the 9th of October in the 13th year of James I, and the writ was tested on the 9th day of October the following year—the words of the statute being that no person shall take any benefit except he or they so robbed shall commence his or their suit or action within one year next after the robbery was committed. It was held the day on which the robbery was committed should be included in the computation of time and that the action was begun too late.

In the cases where this rule is departed from we think it will be almost universally found that to follow it would work some hardship, divest some right or work a forfeiture, and that reason is given for departing from it. This was so in Dowling *v.* Foxhall, 1 Ball & Beatty, 195.

In Sims *v.* Hampton, 1 Sergeant & Rawle, 411, the Supreme Court of Penn., commenting on the conflict of authorities on this subject, said: "It may be perceived that the day on which the act is done has been included or excluded as the nature of the case indicated to the court the propriety of a liberal or rigorous construction."

We are willing that this court should decide this case from that standpoint. The equities are all with us. Our claim is admitted to be just. It is not denied that the funds in the hands of the executor are amply sufficient to pay all the debts of his testator. The plaintiffs were driven from their homes by the plague. They knew nothing of the death of their debtor until informed of it by his executor. They attempted at once to comply with the law. They were told that they were too late; a twelve months' statute of limitations is involved against them. If ever there was a case where a court should use a discretion and regard the hardship of parties in laying down a rule, it seems to us this is one.

Second: We think the evidence shows the executor had notice

of the existence of the claims sued on before the expiration of twelve months from the time of his first publication to creditors to present their claims and have them registered. The object of publication is to enable executors and administrators speedily to ascertain the condition of the estate and to make speedy settlement. Actual knowledge and notice of a claim is tantamount to presentation and registration. Pickett v. Ford, 4 How. 246; Bank of Ala. v. Rhew, 37 Miss. 110; Miller v. Jefferson College, 5 S. & M. 651; Helm v. Smith, 2 S. & M. 453; Miller v. Helm, 2 S. & M. 687; Gordon v. Gibbs, 3 S. & M. 473; Ellis v. Carlisle, 8 S. & M. 552; Brown v. Hill, 4 Cush. 643; Perry v. West, 40 Miss. 233.

It would be legitimate to show a notice of the claim to an executor or administrator by any legal evidence that would satisfy a jury of the existence of knowledge on their part because the design of the statute would thus be accomplished. 2 S. & M. 403.

Are the facts and circumstances in this case such that knowledge of the existence of the indebtedness of Pratt, the deceased, to Wilkerson & Co., upon the part of Dockery, the executor, must be inferred? Dr. Wilkerson says, on the 16th of November, 1880, we were informed of the death of J. P. Pratt by means of a letter from Mr. Dockery, the executor. He stated in this letter that he (Dockery) finds from the books of J. P. Pratt that Pratt owes us a note and account—tells us we had better have the claims probated and registered at once, or it will be too late.

Mr. Dockery's recollection on this point does not seem to be very clear. He remembers writing a letter, but thinks it was a letter of inquiry. A memorandum on the books of Pratt caused him to write. This memorandum or entry on the invoice book of Pratt is set out in full in Mr. Dockery's testimony. He saw this entry both before and after he qualified as executor. The amounts there entered correspond exactly with the amounts due Wilkerson & Co.

This entry was certainly sufficient to give him notice that the amounts there set down were due Wilkerson & Co. He had seen a similar entry in regard to the debt due G. A. Eckerly & Co., on the next page to this, and it had turned out that that entry indicated a debt due Eckerly & Co., in the amount there set down. The slightest inquiry would have put the matter at rest. He was himself at that time buying goods from Wilkerson & Co.

There was the memorandum or entry on the invoice book of his
testator; it was not marked paid, or checked off. He did not find
a single entry of indebtedness on this book which had been paid,
which was not marked paid, or checked off. His testator, though
not a learned or scientific bookkeeper, was evidently a careful one.
He at no time forgot when he cancelled an indebtedness, to cancel
the entry of indebtedness on his invoice book. This memorandum
of indebtedness stood uncancelled, and Mr. Dockery knew the in-
debtedness existed. He hardly makes a feeble attempt to deny it.
The only reason given by him for his want of knowledge of the
existence of these claims is the supposition upon his part without
foundation that they might have been paid. Thus he acknowl-
edges that the entry was sufficient to, and did convey notice to him
that these claims existed or had existed, and this fact, taken in con-
nection with the further fact, hereinbefore stated, that not one of
these entries remained uncancelled when the debt had been paid,
in our opinion justifies the conclusion that he had knowledge of
these claims; that they were in existence and were unsatisfied.

In Miller v. Jefferson College, 5 S. & M. 651, the court, after
saying that an administrator is bound to take notice of notes de-
scribed in a mortgage executed by his intestate, say that the admin-
istrator could not have supposed the debt was paid, because no
entry of satisfaction was made. The facts here justify a like
conclusion.

Where an administrator interposed a plea of *plene administravit*
to a *scire facias* to revive a judgment for debt which had been ob-
tained against his intestate in the county where the administrator
was appointed, and the proof was that assets had been exhausted
in paying debts of inferior dignity to the judgment sought to be
enforced and there was no proof of actual notice to the adminis-
trator of the judgment, it was held that the administrator was
liable. "A judgment should not in our opinion be *per se* notice
to an executor under all circumstances. Still, as personal repre-
sentatives should be faithful and vigilant, it seems to us that they
should be presumed to know what might by reasonable inquiry be
ascertained." 5th Dana, 354.

In Commonwealth v. Bosston, admr., 3 B. Monroe (Ky.), 290,
the court, speaking of this knowledge upon part of adminis-
trators, say: "We are of opinion that as it was in the power of
the administrators by reasonable diligence, so it was their duty to

know of the existence of this debt, that they are therefore to be regarded as having had notice of it, and are absolutely bound by the priority given to it by statute."

It is by no. means certain that the executor did not receive the statements of indebtedness sent out by the plaintiffs addressed to J. P. Pratt. It is true he states he does not remember receiving them. They were sent to Hernando; Hernando was the post-office of the executor; he received the letters sent to Pratt at that place; these letters had Wilkerson & Co.'s address on them with the request that they should be returned if not delivered. They were not returned. From all these facts taken together, we think knowledge of these claims should be inferred. It is not the duty of the executors and administrators to close their eyes and ears to prevent the payment of just debts of the deceased. They are trustees for the creditors, as well as the legatees or distributees.

The learned judge who tried the case below fell into the error of confounding actual and constructive notice, or rather of giving too narrow a definition to actual notice. He held, rightly perhaps, that the executor must have had actual notice that constructive notice would not do. He erred, we think, in holding that the knowledge obtained from the invoice book of Pratt imparted to the executor only constructive notice.

This subject is discussed in *extenso* by Mr. Wade in his recent work on Notice. Wade on the Law of Notice, p. 1.

The idea of the court seems to have been, that to fix actual notice on the executor we must have shown a notification by the creditors. This is not the rule.

"Actual notice may be either expressed or implied. * * * Implied notice imputes knowledge to the party because he is shown to be conscious of having the means of knowledge, though he does not use them. In other words, where he chooses to remain voluntarily ignorant of the facts, or is grossly negligent in not following up the inquiry which known facts suggest." Wade on the Law of Notice, p. 5.

Brief of D. McKenzie:

The question for decision. in this case is, whether the defendant executor had such knowledge or notice of plaintiff's claims against his testator's estate, which claims were not registered within one

year after publication of notice to creditors, required by Code 1871, section 1135, as would prevent the bar of the statute of non-claim, Code 1871, section 1141.

The burden of proof in this case is on the plaintiff, and the preponderance of evidence is certainly for the defendant. The law and facts of this case having been submitted to the court, the judgment stands as the verdict of a jury, and will not be disturbed, when any reasonable view of the evidence warrants the finding, even if the Supreme Court should be of opinion that a different decision might have been reached. 47 Miss. 208, 220; 45 Miss. 658; 53 Miss. 171; 50 Miss. 25; 56 Miss. 189, 194, 619, 622; 52 Miss. 89; 53 Miss. 431.

Actual notice, or knowledge by administrators or executors, of unregistered claims, within one year after publication of notice to creditors, must be proved to take claims out of the bar of the statute of non-claim. Code 1871, § 1141; 40 Miss. 233, and cases cited; 49 Miss. 503.

Our courts have never held that evidence which an executor *might* by diligent search ascertain, as to the existence of unregistered claims (as by writing to Wilkerson & Co. concerning the memorandum on Pratt's books in this instance), should be considered *known* to the executor, and so avoid such bar.

The bar in this case was complete before the Code of 1880 went into effect.

OPINION.—COOPER, J.:

The publication of the notice of grant of letters testamentary was commenced within the time required by the statute. Code 1871, § 2937.

No evidence, however, was given to show that more than one publication was made of the notice. This was not sufficient. The Code provides not only that the notice shall be given by the executor "within one month after the grant of his letters," but also that the notice "shall be published for three consecutive weeks, or longer, if the court should so direct."

Creditors are not bound by the notice unless it is given in conformity with the directions of the law. Pearl *v.* Conly, 7 S. & M. 356; Bank of Ala. *v.* Windham, 31 Miss. 317.

The verdict and judgment is contrary to the evidence. It is shown by the testimony of the executor that the books of his

testator contained an entry made by him evidencing the existence of the debt to the plaintiffs, and that this entry was seen by the executor both before and after the grant to him of letters testamentary. This was notice to the executor of the debt and notice was equivalent to probate of the claim. See authorities cited in George's Digest, p. 297, § 277.

*Judgment reversed* and new trial awarded.